Illinois Central Railroad Company *v.* S. S. Walker.

Railroad Company. *Liability for killing animals.   Fence and gap therein.   Instruction.*

> Where, in an action to recover damages for mules killed by a railroad train, the evidence shows that the defendant's road was fenced in and there was a gap in the fence near where the mules were killed, it is error for the court to instruct the jury that the mere fact of the existence of such fence and gap, without reference to the other circumstances, devolved upon the defendant a greater degree of care and precaution to avoid injury to animals on its track than would otherwise be necessary to avoid liability.   *Tyler* v. *I. C. R. R. Co.*, 61 Miss. 445, distinguished and explained.

Appeal from the Circuit Court of Madison County.

Hon. T. J. Wharton, Judge.

This action was brought in September, 1884, by S. S. Walker to recover of the Illinois Central Railroad Company damages for the killing of two mules, alleged to have resulted from the negligent running of a train on the defendant's road in August of that year.   The defendant plead " not guilty."

The evidence produced at the trial of the case showed that that part of the defendant's road near where the mules were killed was inclosed by a fence on either side of the right of way, and that there were two gaps in the fence on the western side, one near " Way's Bluff," and about forty or fifty yards north of where the mules were killed, and the other about nine hundred yards south of the one just referred to.

The only witness to the circumstances attending the killing of the mules was the engineer who was running the defendant's train. His testimony was as follows : " The train that killed plaintiff's mules was coming south.   It was about nine o'clock at night when I struck one of the mules.   I did not see but one mule. He came up from the west side of the railroad track very suddenly, on the track from the right of way, about twenty-five or thirty feet in front of the engine.   We were on schedule time, running passenger train about twenty-five miles per hour, which is our usual speed.   When I saw the mule I applied my brakes,

which are air-brakes, and engineer applied them from the engine, and before I had time to reverse the engine I had struck the mule, dragged it along about twenty feet, and then it fell off on the west side of the track of the railroad. I was on the lookout and did not see the mule till it suddenly came on the track just in front of the moving train. Where the mule was struck and killed there were weeds and bushes, which were high enough to hide him from sight on the right of way. The reason why I did not see the other mule that was killed, I suppose, was that it must have come on the track from the right of way from the east side of the track. If it had come on the track from the east side very near the engine I could not have seen him, for the reason that no object can be seen by the engineer, who sits on the right side of the engine, that comes on the track from the left side near at or very near the engine. The engine obstructs the view for a short distance in front of the engine. I did everything in human power that could be done to prevent injury to the mule."

The first and second instructions given by the court in behalf of the plaintiff were as follows :

" 2. The court instructs the jury that if they believe from the evidence that the gap in the fence was left open with the knowledge of defendant or its employees, so that stock could stray into it and have no way of egress, these are matters of evidence they may consider in determining whether defendant was guilty of carelessness or negligence, and they may so consider them, even if they should believe further from the evidence that when defendant killed plaintiff's mules every care and precaution on their part was used to prevent such killing.

" 3. The jury are instructed that where a railroad fences in its road-bed and leaves a gap open, they are required to exercise a greater degree of care than is ordinarily required of them, if stock should otherwise stray on the road-bed of the railroad."

The court refused to give the following instructions, asked by the defendant :

" 4. If the evidence in this case proves to you that at the time the stock was killed that the railroad was running and managing

their train with ordinary care and reasonable prudence, and that the stock came upon the right of way of the railroad through the gap or gateway negligently left open by the railroad, or by any one else, and that they suddenly came upon the track off of the right of way in the night time so near the engine that it could not be stopped before striking the stock, they will find for defendant.

" 5. If the plaintiff allowed his stock to wander on defendant's track, exposed to danger of being run over by passing trains, he assumed the risk of his stock being killed, if the railroad exercised reasonable care and ordinary prudence in running and managing their train.

" 6. The court instructs the jury that if they believe from the evidence that the train which killed plaintiff's mules was running at or near ordinary schedule time, and the engineer did not see the mule, or could not, by exercising ordinary watchfulness, have seen it until it was too late to prevent the killing, then they will find for the defendants.

" 7. The court instructs the jury that railroads are not required in this State to fence their tracks, and having fenced them they are not required to keep them up, and if they believe that the train which killed plaintiff's stock was run and managed with reasonable care and ordinary prudence, then they will find for the defendant.

" 8. The court instructs the jury that if they believe from the evidence that the stock in question were killed in the night time, and that the engineer, in the exercise of ordinary watchfulness, could not have seen the stock until he was too close to prevent the killing, and was running his train with ordinary care and prudence, then they will find for the defendant, even though they should believe that the track was fenced on both sides and the stock had entered through a gap in said fence.

" 9. The court instructs the jury that even though the railroad, having fenced its track, is bound to keep it intact, yet they are excused from this duty, where the fence is cut or thrown down, until they discover such defect, or have reasonable time to do so, and they are not required to keep a constant patrol to discover such

defects, and it devolves on the plaintiff to show that the railroad had notice of such defect, or had a reasonable time to discover such defect after it occurred and to repair it, and if the stock of plaintiff entered upon defendant's track through a gap so casually opened, and were killed by defendant's train, then they will find for defendant, if they believe that the train which did the killing was run with ordinary care and prudence.

" 10. The court instructs the jury that if they believe from the evidence that the train which did the killing was running at or near ordinary schedule time, and the engineer did not see the stock, or could not by exercising watchfulness have seen it until it was too late to prevent the killing, then they will find for defendant.

" 11. The court instructs the jury that if they believe from the evidence that the mules came suddenly on the track before a moving train so near to it that it could not be stopped, with ordinary care and efforts, before it struck and killed the mules, you will find for the railroad.

" 12. If plaintiff allowed his mules to run out and stray upon the track of the railroad, exposed to danger of being run over by the railroad, he then assumed the risk of the stock being killed by the railroad train, if the evidence showed the railroad was not negligent in running and managing its train that killed the stock ; and the plaintiff must bear the loss, and you will find for railroad."

The jury rendered a verdict for the plaintiff, which the court refused to set aside ; and the defendant appealed.

*Smith & Powell,* for the appellant.

1. We complain that instructions Nos. 2 and 3 given for plaintiff is error. The court practically told the jury that where the railroad had fenced its track and left a gap opened in such fence, it was an *absolute insurer* of stock entering such gap. We think this is not good law. The farthest that this court has gone in this direction is in the case of *Tyler* v. *I. C. R. R. Co.,* 61 Miss. 445, where it says that in cases of this kind " the jury should be allowed to say whether that degree of care which these circumstances called for had been exercised by those in charge of the train."

The court in the case at bar tell the jury by refusing defendant's and granting plaintiff's instructions, that no matter what care was used by the employees of the railroad in managing the train which did the killing, the railroad is still liable. We can very well see how, if the track is fenced on both sides, and stock is seen by the engineer in the daytime inclosed between the wires, with no way of escape, the engineer should be required to use every precaution to prevent killing—stopping his train, even, if necessary. But where the killing is at night and it was impossible to see the stock until too late to prevent the killing, and no amount of care could have prevented it, we do not think the railroad liable for the loss. It is an accidental, unavoidable act, for which the railroad is not responsible.

2. The court erred in refusing instructions No. 4 to No. 12, both inclusive, for defendant, and more especially instruction No. 9, for defendant. See Pierce on Railroads 418–19; Cooley on Torts 657 and note; *Robinson* v. *Grand Trunk R. R. Co.,* 32 Michigan 322; *Toledo, etc., R. R. Co.* v. *Donnills,* 21 Ind. 256; *Indianapolis R. R. Co.* v. *Truitt,* 24 Ind. 162; *Pittsburg R. R. Co.* v. *Smith,* 26 Ohio (N. S.) 124; *Russell* v. *Honey,* 20 Iowa 219; 30 Iowa 459; 82 Ill. 123.

*R. C. Smith,* of counsel for the appellant, argued the case orally.

*W. P. & J. B. Harris,* on the same side.

The court will observe that the theory upon which the learned judge in the lower court acted in granting instructions for plaintiff and in refusing instructions asked by defendant was, that the fact that the company had fenced its track and then made a gap in it could be considered as an act of negligence on the part of the company upon which the jury could found a verdict against it, notwithstanding the fact that every precaution was taken by the employees in charge of the train to prevent the killing of stock after they became aware of its presence, and in the absence of all proof that the fence contributed to the killing or brought it about in some way.

It is quite evident that the judge in lower court was governed in his ruling by a mistaken conception of the decision of this court in

the case of *Tyler* v. *I. C. R. R. Co.*, 61 Miss. 445. The facts in that case and in the case at bar are not at all similar, and the decision in that case was based upon the peculiar state of facts then shown.

In that case the company proved that it had used, with reference to the stock *seen* by the engineer, only such care as it would use, or was required to use, under ordinary circumstances. They did not show that they had used every possible precaution after seeing the cattle, and it was upon this point that the case went off.

In the case at bar the facts are very different from those in the Tyler case. The engineer says he used every human effort to prevent the collision, but it was night time, and he did not see the mule until it jumped suddenly in front of his engine. The mule was not attempting *to escape through the* gap, but came up on the track from the side on which the gap was—the west side.

The fenced track with its gaps is not of itself a negligence creating a liability. It may be said that if the inclosure with the gap increases the risk a greater degree of care is required. If all the care required was used and still the injury occurred, it must be shown that it was directly traceable to the fence in its condition to render the company liable.

*W. P. Harris* also made an oral argument.

*G. W. Thomas,* for the appellee.

The circumstances of the killing, "to wit," within the right of way of the road inclosed by a wire fence in which there had been a gap cut and left open for several months; that through this gap Mr. Averitt had hauled cross-ties for the road, and delivered them within the inclosure, and that the animals had strayed within this inclosure from which there were no means of egress within at least nine hundred yards of the point at which the killing was done. All go to show that this is no ordinary case to which the rule or law sought to be relied upon by the defense is applicable. See *Tyler* v. *I. C. R. R. Co.*, 61 Miss. 445.

Nothing is more evident than that the jury in this case believed, and justly believed, that the testimony for the plaintiff largely preponderated, and that upon the points that the evidence conflicted

they disbelieved the statements of the engineer.    The testimony of this witness was unreasonable and inconsistent.

This is a case in which the credibility of witnesses and the *greatest* conflict of testimony is involved, and if the appellant can give no greater reason for the reversal of this cause than that injustice has been done, and that the verdict was contrary to the evidence, this court will most assuredly affirm.    The jury can disbelieve every statement of the engineer.    59 Miss. 280 ; Ib. 284 ; 24 Miss. 694.

The counsel for the appellant objects to the instructions granted in the court below, particularly to instruction No. 3, which expresses the idea that where a railroad company fences its road-bed and then opens a gap, that in the killing of stock they must exercise a greater degree of diligence than is ordinarily required, if it appear that the stock strayed within this " trap " as it were.

In the case of *Tyler* v. *I. C. R. R. Co.*, the circumstances are almost exactly similar to those in this case.    Judge Chalmers, in rendering the decision in that case, says that the law sought to be invoked, " to wit," the decision in the case of *Packwood* v. *Railroad Co.*, 59 Miss. 280, was not applicable to the case then before the court, and says further that the road must show by proof that it had met every requirement which the facts in the case devolved upon it.    He says, further, that if the jury had decided in that case " that some other and further duty was due to an animal so confined than to one which had a right of egress unobstructed by any act of the company, the court could not say as a matter of law that its decision was wrong."

The instructions refused the defendant in the court below were properly refused.    Those granted were very liberal under all the circumstances of the case as developed before the court.

*G. W. Thomas* also argued the case orally.

CAMPBELL, J., delivered the opinion of the court.

The second and third instructions for the plaintiff should not have been given.    If every care and precaution was used by the servant of the railroad company to prevent injury to the mules,

there was no liability for it.  It is not true that where the railroad is fenced, and there is a gap in the fence through which animals enter, a greater degree of care is required to avoid injury to such animals than would otherwise be necessary to avoid liability.  The case of *Tyler* v. *Railroad Co.*, 61 Miss. 445, does not so decide. In that case it was held error to instruct the jury to find for the defendant.  The facts were that cattle had entered a breach in the fence and crossed the railroad, and were seen by the engineer, who did not act on the just assumption that the animals when frightened would seek to escape by the way they had entered, and to do this would have to cross the road in front of the running train, but continued to run his train toward the cattle until it was too late to avoid killing a cow, which was trying to escape by crossing the road to the breach in the fence.  On this state of facts we held that the jury should not have been instructed to find for the defendant, but should have been allowed to consider whether, under the circumstances, it was not negligence not to have acted on the knowledge of the instinct of the animals, and stopped the train, so as to afford an opportunity for their escape.  The case gives no countenance to the proposition that, because there was a fence and a gap in it, any greater degree of care on the part of the company with reference to animals on its right of way was required.  As that case shows, there may be circumstances in which the existence of a fence and a breach in it will constitute factors in the solution of the question of care on the part of a railroad company to avoid injury to animals, but a fence and a gap in it are not *per se* a ground of liability for injury to animals which have entered.  The instructions asked by the defendant and refused should have been given except such as were a mere repetition of the rule announced.

*Reversed and remanded.*